DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:05 CR 363 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| ERIC KACVINSKY, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## I.  INTRODUCTION

The defendant entered a plea of guilty to a single count of unlawful possession of unregistered firearms in violation of 26 U.S.C. §§ 5861(d) and 5871.  No plea agreement was signed by the parties and presented to the court prior to the defendant's plea of guilty on November 1, 2005.

The advisory sentencing guidelines provide for a base offense level of 18 less 3 levels for acceptance of responsibility and thus a total offense level of 15.  The defendant has no prior convictions.  As a consequence, the Criminal. History Category is I.  The advisory sentencing guidelines thus call for a sentence of incarceration in the range of 18 to 24 months.

Counsel for the defendant has filed an extensive sentencing memorandum requesting that the court, given its new powers under the teachings of *United States v. Booker*, 543 U.S. ____, 125 S.Ct. 738 (2005), impose a sentence that would avoid incarceration.

*Booker* teaches that the court, in determining whether to vary from the advisory guidelines range, should consider the sentencing factors set forth in 18 U.S.C. § 3553(a).  The

(1:05 CR 363)

requirement of the District Court to elaborate on its findings in the context of 18 U.S.C.

§ 3553(a) is discussed by the Sixth Circuit in *United States v. Michael Jackson*, 408 F.3d 301 (6th

Cir. 2005).

The new grant of discretion to the sentencing court has made the subject of sentencing, in

this court's view, more difficult because the court must weigh the § 3553(a) sentencing factors

and elaborate on its findings to assist the Sixth Circuit in its review of a sentence under attack by

either the government or a defendant where the court has varied from the advisory guidelines

range either upward or downward.[1]

The court now moves to its analysis of the sentencing factors.

---

[1]In the past week the court has engaged in one upward variation from the advisory guidelines range in *United States v. Zaky*, Case No. 1:05 CR 153, and in a downward variation in *United States v. Walker*, Case No. 1:05 CR 410.  In both cases the court engaged in a variation in the offense levels and then pronounced a sentence within the new range based upon the new offense level chosen by the court as a consequence of the variation.

2

(1:05 CR 363)

## II. A REVIEW OF THE § 3553(a) FACTORS

**(1).  The nature and circumstances of the offense and the history and characteristics of the defendant.**

The offense conduct[2] leading to the defendant's plea of guilty is set forth in the presentence report as follows

5.      During the course of the Operation 8112 Investigation, Eric Kacvinsky, the defendant, a City of Painesville Police Officer, was identified as an associate of James Blomquist, the initial target of the Operation 8112 Investigation.

6.      Blomquist and various associates were operating a check-cashing scheme, where they would purchase expensive power equipment using fictitious identities and fraudulent or "bogus" checks.  Blomquist would then sell the items at a fraction of their actual cost, in order to make money.  The investigation revealed that Kacvinsky had purchased a generator, a drill press, a circular saw, chain saws and other various items from Blomquist and confidential informants.  *Through monitored contacts, the confidential informants verified that Kacvinsky had knowledge of the fact that the items had been purchased using fictitious identities and using bank accounts with insufficient funds.  Further information from confidential informants, indicated that Kacvinsky had supplied Blomquist with a bulletproof vest and that Kacvinsky possessed multiple firearms, including a machine gun and a silencer.*[3]

7.      On 6/17/05, as part of the ongoing Operation 8112 Investigation, a state search warrant for stolen property was executed at the residence of Eric Kacvinsky, located at 7183 Crawford Rd., Williamsfield, Ohio.

---

[2] Defense counsel has filed objections to the characterization of the defendant as an associate of James Blomquist, the initial target of the Operation 8112 Investigation .  The defendant alleges that he met Blomquist when he hired Blomquist Construction Company to put an addition on his house.  Additionally, the defendant indicates that he stands ready to defend any allegations of misconduct as far as Blomquist is concerned.

[3] The government has not filed a sentencing memorandum nor has it produced any testimony to support the italicized allegations.

3

(1:05 CR 363)

8.     Officers contacted Kacvinsky at the front door of his residence and explained to Kacvinsky the nature of their visit.  The defendant was cooperative with officers and consented to the search of his residence. The defendant took officers to the garage of his residence and pointed out all of the property that he had purchased from Blomquist.  Kacvinsky originally stated that he had no knowledge of the property being "stolen" or that the property had been purchased with"bogus" checks.  The items, a GPS unit, fishing sonar unit, a Zodiac boat, foot air pump, boat oars, generator, drill press, circular saw, band saw, and two chain saws were taken as evidence by officers.

9.     Officers interviewed the defendant about the purchased property and the defendant provided the officers with a written statement.  The defendant was also questioned about his possession of firearms and the defendant stated that he owend several firearms, including a machine gun and a silencer that were not registered to him.  The machine gun, silencer and two magazines with a total of 61 rounds of ammunition were located in the defendant's bedroom and were seized by ATF.  The other firearms Kacvinsky owned were inventoried and checked in NCIC, but were not taken.  The defendant provided written and verbal statements to officers about his ownership of the machine gun and silencer, wherein he stated that he had purchased the machine gun and silencer from Rex Buchs, another Painesville police officer approximately nine years ago for $500. The defendant stated he knew the machine gun and silencer were not registered.

10.    The defendant further stated that he had provided the bullet-proof vest to Blomquist as a form of payment for construction work that Blomquist had performed on the defendant's house.  The vest was seized during a search of Blomquist's residence prior to the search of the defendant's residence.

The defendant has no criminal record.  He is 36, married and supports 4 children.  The oldest child is from a previous marriage.  The defendant has a lengthy history of service with the military and law enforcement.

In the defendant's written statement to the probation officer he included what he described as "a short history of my life" and his account follows:

4

(1:05 CR 363)

". . . On 06-28-86 I left Westlake, Ohio High School for the US Navy.  I did completed (sic) boot camp and apprenticeship training in Chicago, IL.  During this time I also obtained a GED.

"Between November, 1986 and January 28, 1990 I served aboard the USS Constellation CV-64.  I obtained two Sea Service ribbon for two Western Pacific cruises, an Armed Forces Expeditionary Medal, and a Meritorious Unit Commendation.  I also obtained a Letter of Commendation about my involvement in an incident that occurred on the USS Constellation.  I did obtain the rank of Store Keeper Petty Officer Third Class.

"During January 28, 1990 until April 28, 1993 I was in the US Navy Active Reserves in Cleveland, Ohio.

"From 8-19-1991 until 02-14-1992 I attended Wooster Business College and obtained a Private Security certificate.  I also attended numerous Security related courses and training afterwards.

"During July 19, 1993 until January 1994 I attended Cuyahoga Community College for Law Enforcement Basic Training.  I graduated and had my Basic Police Officer Academy Certification.

"I was hired in November 1994 in Beaufort County, South Carolina as a Deputy Sheriff.  I resigned in August 1995 due to relocating to Painsville, Ohio for a Police Officers Position.

"From September 09, 1995 until August 11, 2005 I was a Painsville Police Officer.  The following are just a few of the titles and accomplishments I did above and beyond that of a Police Officer.

C.I.T.E. team member (a task force used to improve conditions and enforce laws in the city)
High Risk Warrant Entry team member
Glock Pistol Armorer (Three times certified)
AR-15 / M-16 Armorer (AR-15 is a semi-automatic weapon and M-16 is a machine gun)
Senior Patrolman on Afternoon shift for numerous years

"Starting for the year of 1998 I was elected Secretary of The Fraternal Order of Police Lodge #90 this was for three consecutive year terms, with each term being one year.  I was then elected as the Vice-President for another three years until I assumed the duties of President during the last term, due to the current President

5

(1:05 CR 363)

resigning in 2003.  After six years of Lodge Office I chose not to run due to family commitments.

"For the school year of 2000, 2001, and a partial year of 2002 I was a Resident Director of Lake Erie College in Painsville, Ohio.  I was in charge of the Men's Dormitory as a Live-in Resident Director.  This was a part time job but instead of receiving a paycheck I had an apartment to live in without rent.  This position was in addition to the Painsville Police Department.  I left due to family requirements that took me away from the students in my dormitory. I did name my replacement and this was another Police Officer I worked with and he assumed my duties as a Resident Director.

"After resigning from the Painsville Police Dept. I graduated TDDS truck driving school with a Class "A" Commercial Driver's License on September 05, 2005.  Currently, I am employed with P I & I as a company truck driver.  I do have the intention of purchasing a truck, trailer, and equipment.  This will then allow me to lease to P I & I and I will be an Owner Operator."

The court has received numerous letters and statements from friends and fellow police officers attesting to his bravery and commitment to duty.  They follow as Appendices 1 - 16, attached hereto.

### (2)  The Need for the Sentence Imposed

A.  To reflect the seriousness of the offense, promote respect for the law and provide punishment for the offense.

The several firearms and the silencer were not used in the commission of any other federal or state crime.  There is also no indication that the defendant has been other than a law-abiding citizen during his lengthy career as a law enforcement officer.  There is no indication that the defendant has engaged in conduct that suggests that he had any intention to use the machine gun or the silencer in any criminal activity.  In the court's view a sentence to imprisonment is not necessary to provide adequate punishment for the defendant's conduct.  He

6

(1:05 CR 363)

has already been discharged from his position as a police officer and has lost all the benefits that relate to a life time of public service.  His loss of his employment as a police officer is directly related to and caused solely by the conviction in this case.

      B.  To afford adequate deterrence to criminal conduct.

      In the court's view, a sentence to a period of incarceration is not necessary to provide adequate deterrence under the peculiar circumstances of this case.  Rather, the court is of the view and so finds that a sentence requiring home detention for a period of six months but with work release privileges, and community service of 200 hours, and a fine of $1,000, provides adequate deterrence under the circumstances of this case.

      C.  To protect the public from further crimes of the defendant.

      The court is of the view and so finds, that the defendant is remorseful for his criminal conduct.  The court is of the further view that the defendant will not engage in criminal conduct in the future.  Nothing in his history of military and public service suggests that he will be involved in any further criminal conduct.  As a consequence, the court is of the view that a sentence of home detention with work release privileges for a period of six months, and community service of 200 hours, and a fine of $1,000,  will protect the public from the possibility of further crimes of this defendant.

      D.  To provide the defendant with needed educational or vocational training, medical care or other correction treatment in the most effective manner.

      The Presentence Report provides information as to the defendants' physical condition, mental and emotional health, substance abuse history, a summary of his education and vocational

7

(1:05 CR 363)

skills, and his miliary record.   See Paragraphs 34, 35, 36, 37 and 38 in the Presentence Report

which state as follows:

34.   At the present time, the defendant is seeing Doctor Friedenberg of Mentor, Ohio for acid reflex (sp.)  The defendant takes Nexium, one tablet, daily in the morning, for this condition.  The defendant also takes a blood pressure medication due to high blood pressure.  The defendant has also had four surgeries in his right hand.  One of these surgeries occurred when he was arresting a crack dealer, another one was when the defendant fell, and the remaining were from old high school injuries.

35.   The defendant has never been examined or treated by a psychiatrist, psychologist, counselor or other mental health professional.  He has never taken any mental health medications, nor has he ever been suicidal.  The defendant has never been a patient in any psychiatric wards or hospitals.  The defendant denies ever being sexually, physically or emotionally abused.

36.   According to the defendant, he experimented with marijuana while in high school.  He has not used any marijuana since that time.  The defendant also admits to drinking alcohol on the weekends.  According to the defendant, he drinks approximately six to eight beers over the course of a weekend.  He does not feel he has a problem.  The defendant has never had any substance abuse treatment.

37.   The defendant last attended Westlake High School, Westlake, Ohio, withdrawing after his junior year in 1986 at the age of 17.  Following his withdrawal from high school, the defendant enlisted in the United States Navy where he earned his GED.  Following his discharge in the Navy, the defendant attended the Wooster Business College, Cleveland, Ohio in 1992 and earned a State of Ohio certification in private security.  The defendant also attended the Cuyahoga Community College in Parma, Ohio in 1992, earning his State of Ohio Police Officer certificate.

38.   The defendant entered the United States Navy on July 28, 1986.  He was subsequently given an honorable discharge on January 29, 1990 after obtaining the rank of Petty Officer Third Class (E-4).  From January 28, 1990 through April, 1993, the defendant went to the United States Navy inactive reserves.  While in the Navy, the defendant received two sea service awards, a letter of commendation after repairing a ship after it caught fire.  He also went on six armed forces expeditions.  He further did two western deployments.

(1:05 CR 363)

The court concludes that the defendant does not need additional education or vocational training, medical care, or other correctional treatment.

Consequently, the court is of the view and so finds that a period of incarceration is not required.  Rather, the court finds that a sentence of six months home detention with work release privileges, community service of 200 hours and a fine of $1,000 is appropriate.

### III. CONCLUSION

After considering the advisory guidelines sentencing range and the analysis of the factors set forth in 28 U.S.C. § 3553(a), the court concludes that it should engage in a variation and reduces the offense level by 5 levels, finding that a sentence to a period of home detention of six months with work release privileges, and community service of 200 hours, and a fine of $1,000, provides a reasonable basis for the decreased sentence.  The court is of the belief that such a decrease is, under the circumstances of this case as outlined herein, a reasonable sentence in the context of the teachings of *Booker*.

The clerk is directed to file this opinion and attach a copy to the sentencing order.

IT IS SO ORDERED.

12/22/2005                                          s/David D. Dowd, Jr.
_____                          _____
Date                                                    David D. Dowd, Jr.
                                                             U.S. District Judge

9